CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAY 19 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ALLTECH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:08 CV 00045 |
| | ) | |
| v. | ) | |
| | ) | |
| MYRIAD DEVELOPMENT, INC., | ) | Jury Demanded |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff ALLTECH, Inc., by its attorneys, Duane Morris LLP, for its complaint against defendant Myriad Development, Inc. alleges as follows:

### NATURE OF THE CASE

1. This is an action for injunctive relief and compensatory damages arising from the calculated and deliberate breach by defendant Myriad Development, Inc. ("Myriad") of a Subcontract Agreement dated May 3, 2007 (the "Subcontract") pursuant to which Myriad agreed to provide certain services to assist plaintiff ALLTECH, Inc. ("ALLTECH") in performing under an agreement (the "Prime Agreement") with the Federal Emergency Management Agency ("FEMA") relating to emergency inspections of residential housing damaged in natural and other disasters.

2. On March 28, 2008, at a time when Myriad knew ALLTECH was beginning work on a disaster that had just occurred in the State of Missouri, Myriad suddenly and without warning cut off ALLTECH's access to inspection photographs and the system that collects the inspection data that ALLTECH is required to provide under the Prime Agreement. Since that time, ALLTECH has been unable to supply FEMA with inspection photographs stored by

Myriad which FEMA needs in order to provide relief to disaster victims and which FEMA has a right to obtain under the Master Agreement.

3. In order to fulfill its obligations under the Master Agreement and ensure that emergency inspection data could continue to be collected and stored despite Myriad's breach of the Subcontract, ALLTECH had to make alternative arrangements for obtaining inspection photographs and transmitting them to FEMA along with other essential data, and ALLTECH has incurred substantial expense in doing so for which Myriad should be held liable.

## THE PARTIES

4. ALLTECH is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 465 Spring Park Place, Herndon, VA 20170.

5. Upon information and belief, Myriad is a corporation organized and existing under the laws of the State of Texas and having its principal place of business at 6300 Bridgeport Parkway, Building 1, Suite 100, Austin, TX 78730.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2) in that the matter in controversy exceeds $75,000.00, exclusive of the interest and costs, and is between citizens of different states.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because Myriad resides in this District under 28 U.S.C. § 1391(c) and a substantial part of the acts or omissions giving rise to the claim occurred in this District where Myriad is subject to personal jurisdiction and is required to station employees under the terms of the Subcontract.

-3-

## FACTUAL BACKGROUND

8. ALLTECH is in the business of assembling, training, and deploying teams of inspectors, field incident managers, and computer operations personnel to provide housing inspection services on an expedited basis in presidentially-declared disaster areas. ALLTECH has provided inspection services to FEMA since 1995 and it has continued to be awarded contracts by FEMA based on its proven ability to respond quickly to FEMA's requests for inspection data.

9. ALLTECH's inspections are documented by means of handheld computers that collect data, including photographs, and instantaneously transmit such data electronically to a central processing center. Before issuing disaster relief checks to homeowners affected by disasters, FEMA reviews the data ALLTECH provides. Any interruption in the transmission of inspection data to FEMA can result in a delay in payment to disaster victims. It is therefore critical that FEMA have prompt and complete access to ALLTECH's inspection data.

10. The Prime Agreement requires that ALLTECH take photographs of residential damage and transmit those photographs to FEMA promptly upon request. The Prime Agreement includes a section entitled Performance Work Statement (the "Work Statement"). Paragraph 9 of the Work Statement explicitly states that "[t]he Contractor shall perform on-site inspections of residences and provide FEMA with photographs of the inspected dwellings."

11. Paragraph 9.4 of the Work Statement further provides that "Inspectors normally complete inspections by electronic means using the ACE system." As defined in the Work Statement, the ACE system is "[t]he field software used to complete inspections" under the disaster recovery program.

12. In addition, Paragraph 9.14 of the Work Statement provides, in relevant part:

> The contractor shall store the photographs for FEMA. The photographs will be identified by the FEMA registration ID, archived by the contractor and available electronically 7 days following the completion of the inspection. The contractor will deliver to FEMA any requested photograph within 24 hours of the request.

*   *   *

> Training, picture warehousing, camera logistics, purchase inventory, tracking of photography equipment and transmitting archived picture data shall be the responsibility of the contractor.

13. To facilitate ALLTECH's performance under the Prime Agreement, ALLTECH and Myriad entered into the Subcontract. (A true and correct copy of the Subcontract is annexed hereto as Exhibit A and incorporated herein.)

14. The Subcontract refers to the Prime Agreement and states that "ALLTECH retains SUBCONTRACTOR [Myriad] to perform set portions of the SERVICES," which are defined as follows in Article 2 of the Subcontract, entitled "Employment of Subcontractor":

> The SERVICES include the provision of qualified staff and management personnel to support the inspection process, which is conducted by using handheld computers and the FEMA NEMIS' ACE II software to record and transmit the data to the FEMA NEMIS system.

15. Article 3 of the Subcontract, entitled "Scope of Services," requires that Myriad render in a satisfactory and proper manner the services set forth in Exhibit A to the Subcontract, which incorporates the Work Statement from the Prime Agreement. The services Myriad is required to render under the Subcontract include providing the technology used in the transmission and storage of inspection photographs (as described in paragraphs 10 through 12 above).

16. Article 3 of the Subcontract further provides that, unless delegated by ALLTECH to work at another location, Myriad employees "will be located at the Project Office at 600

Pegasus Court, Winchester, VA 22602."

17. Pursuant to the Subcontract, ALLTECH has used Myriad's services to transmit inspection data from the field to FEMA and to store inspection data, including photographs. ALLTECH's inspection photographs are also archived on Myriad's server.

18. Myriad has no ownership interest in, or any other right to, the inspection data, including photographs, which ALLTECH is required to provide to FEMA pursuant to the Prime Agreement.

19. Article 5 of the Subcontract provides that the initial term of the Subcontract was from May 1, 2007 through September 30, 2007, subject to an award by FEMA of Option Year Task Orders from October 1, 2007 through September 30, 2008. FEMA awarded ALLTECH an Option Year Task Order. As a result, the Subcontract remains in effect through September 30, 2008.

20. Since the Subcontract was signed approximately one year ago, ALLTECH has paid Myriad $544,987 for services provided pursuant to the Subcontract. These amounts include payment in full to Myriad for the uploading and storage of the inspection photographs which now reside on Myriad's server. ALLTECH has thus fully performed under the Subcontract, and is ready, willing, and able to continue to perform under the Subcontract.

21. Pursuant to Article 9 of the Subcontract, Myriad agreed to indemnify ALLTECH and hold it harmless from and against any losses, damages, and expenses due to Myriad's failure to comply with its obligations under the Subcontract, excluding consequential or incidental damages.

22. The Subcontract provides that it is governed by the law of the Commonwealth of Virginia except with respect to conflict of law rules that would require application of the laws of another jurisdiction.

23. Article 17 of the Subcontract provides that the Subcontract "represents the entire and integrated agreement between ALLTECH and SUBCONTRACTOR with regard to the PROJECT and the performance of the SERVICES." Article 17 of the Subcontract further provides that it does not affect any other agreements between ALLTECH and Myriad.

24. In or around February 26, 2008, Myriad presented ALLTECH with an amendment to a different agreement to which Myriad and ALLTECH were also parties, and it asked ALLTECH to sign the amendment. Among other things, the amendment provided for the extension of the other agreement for as long as the Prime Agreement was in effect.

25. ALLTECH was unwilling to agree to the extension contemplated by the amendment to the other agreement and, on March 25, 2008, it sent the amendment back to Myriad with the provision concerning the extension crossed out.

26. Three days later, in an apparent effort to pressure ALLTECH into agreeing to an amendment which was unacceptable – and without regard to Myriad's obligations under the Subcontract or the effect of its conduct on ALLTECH's ability to provide time-sensitive disaster services – Myriad suddenly and without warning cut off ALLTECH's access to the server used to transmit and store inspection data.

27. Under the terms of the Prime Agreement, ALLTECH is required to produce photographs to FEMA within 24 hours of a request. Since March 28, 2008, FEMA has requested that ALLTECH provide it with inspection photographs, and ALLTECH has been unable to

comply with FEMA's requests because, despite ALLTECH's demands, Myriad has refused to deliver the photographs.

28.  Myriad is able to control access to the inspection photographs because the photographs reside on Myriad's server where they can be located based on identification numbers that should correspond to FEMA application numbers. The photographs reside on Myriad's server pursuant to the terms of the Subcontract – and not because Myriad has any ownership or other interest in the photographs.

29.  In addition to cutting off ALLTECH's access to inspection photographs previously taken by ALLTECH's field inspectors, Myriad has interfered with emergency inspections since March 28, 2008 by cutting off access to Myriad's system and preventing ALLTECH's field inspectors from using the system to transmit the inspection data they collect on their handheld computers. Following Myriad's breach of the Subcontract, to prevent an interruption in ALLTECH's ability to document emergency inspections and irreparable harm to ALLTECH's reputation as a reliable provider of inspection services, ALLTECH has had to find alternative ways to transmit and store inspection data. To this end, ALLTECH has expended considerable resources. ALLTECH was forced to send people to meet directly with inspectors to retrieve inspection data. Moreover, ALLTECH has been compelled to undertake the development of new systems that permits it to comply with the business rules and objectives set forth in its contract with FEMA. ALLTECH has not and cannot create a system whereby it can access the photographs and data that Myriad continues to wrongfully withhold from ALLTECH.

30.  Even though ALLTECH has requested on multiple occasions since March 28, 2008 that Myriad comply with its obligations under the Subcontract, including the conveying of inspection photographs to ALLTECH that FEMA has requested, so that ALLTECH can deliver

them to FEMA, Myriad has failed and refused to provide any photographs to ALLTECH. Instead, in a bad faith attempt to justify its breach of the Subcontract, deflect attention from its own wrongful conduct, and obtain additional leverage in its effort to force ALLTECH to accede to its demand that ALLTECH amend a different agreement, Myriad filed a baseless lawsuit against ALLTECH in Texas relating solely to the other agreement.

### FIRST CLAIM FOR RELIEF
(Specific Performance and Mandatory Injunction)

31. ALLTECH repeats and realleges the allegations of paragraphs 1 through 30 above as if fully set forth herein.

32. Myriad is required under the Subcontract to support the inspection process by, among other things, transmitting inspection photographs to ALLTECH so that ALLTECH can make timely production of the photographs to FEMA.

33. The inspection photographs that are in Myriad's possession are unique and are not otherwise available to either ALLTECH or FEMA.

34. By refusing to produce the photographs to ALLTECH, Myriad has prevented ALLTECH from fulfilling its obligations to FEMA under the Master Agreement, and has also impeded FEMA's ability to provide relief to disaster victims.

35. ALLTECH has no adequate remedy at law.

36. By reason of the foregoing, Myriad should be ordered to specifically perform under the Subcontract and directed to provide all inspection photographs to ALLTECH.

### SECOND CLAIM FOR RELIEF
(Breach of Contract)

37. ALLTECH repeats and realleges the allegations of paragraphs 1 through 36 above as if fully set forth herein.

38. The Subcontract is a valid and enforceable agreement between ALLTECH and Myriad.

39. ALLTECH has fully performed under the Subcontract.

40. By cutting off ALLTECH's access to inspection data and the system used to collect and transmit inspection data on March 28, 2008 and refusing to give ALLTECH access since that time, Myriad breached the Subcontract.

41. Pursuant to Article 9 of the Subcontract, Myriad is obligated to hold ALLTECH harmless from and against any losses, damages, and expenses due to Myriad's breach of the Subcontract.

42. ALLTECH has incurred substantial expenses as a result of Myriad's breach of the Subcontract, including, but not limited to, mitigation costs and attorneys' fees and expenses. Because the damages that Myriad's breach of the Subcontract caused ALLTECH is continuing, they cannot yet be quantified with precision, but exceed $75,000.00, exclusive of interest and costs.

### THIRD CLAIM FOR RELIEF
(Conversion)

43. ALLTECH repeats and realleges the allegations of paragraphs 1 through 42 above as if fully set forth herein.

44. The inspection photographs are not the property of Myriad.

45. Myriad has refused to deliver the inspection photographs to ALLTECH despite ALLTECH's repeated demands therefor.

46. By reason of the foregoing, ALLTECH has converted the inspection photographs and is liable for damages in an amount to be determined at trial in excess of $75,000.00.

47. WHEREFORE, plaintiff demands judgment as follows:

(1) on its first claim for relief, judgment compelling and enjoining defendant to fulfill its obligations under the Subcontract and to deliver to plaintiff all inspection data, including inspection photographs, currently in defendant's possession, custody, or control;

(2) on its second claim for relief, awarding plaintiff damages in an amount to be determined at trial, including attorneys' fees and expense, pursuant to defendant's obligation to indemnify plaintiff for losses caused by defendant's breach of the Subcontract, together with interest thereon;

(3) on its third claim for relief, awarding plaintiff damages in an amount to be determined at trial based on defendant's conversion of the inspection photographs, together with interest thereon; and

(4) and the costs and disbursements of this action, and such other and further relief as the Court deems proper.

Dated: May 16, 2008

Respectfully submitted,

_____
Joseph J. Aronica (VA Bar No. 02548)
DUANE MORRIS, LLP
505 9th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 776-7800
Fax: (202) 776-7801
jjaronica@duanemorris.com
Counsel for Alltech, Inc.

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Alltech, Inc.

**DEFENDANTS**
Myriad Development, Inc.

**(b)** County of Residence of First Listed Plaintiff  **Frederick**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Frederick**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Joseph J. Aronica, Duane Morris LLP, 505 9th St., NW, Suite 1000, Washington, DC 20004, (202) 776.7800

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☒ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§ 1332 and 1391
Brief description of cause:
Equitable Claims; Conversion; Breach of Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ In excess of $75,000 plus equitable relief (including preliminary injunction)
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE Sparks in the Western District of Texas
DOCKET NUMBER 1:08-cv-00253-SS

DATE: 5/16/08
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE Wilson  5:08CV45  MAG. JUDGE_____